1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: Long Dei Liu,<br><br>        Debtor.<br>_____<br><br>William Hong and Harry Hong through Their Guardian Ad Litem, Yuanda Hong,<br><br>        Appellants,<br><br>v.<br><br>Long-Dei Liu; Smiley Wang-Ekvall, LLP; David A. Kay, Esq.; and Rosenberg, Shpall & Zeigen, APLC,<br><br>        Appellees. | Case No. 8:19-CV-00131-JLS<br><br>Adv. Case No. 8:16-AP-01233-TA<br><br>BK Case No. 8:16-BK-11588-TA<br><br>**ORDER AFFIRMING IN PART, REVERSING IN PART, AND REMANDING IN PART BANKRUPTCY COURT JUDGMENT AND ORDER RE ATTORNEY FEES** |

This is an appeal of the Bankruptcy Court's award of fees to counsel.  For the reasons and in the manner set forth below, the Court affirms in part, reverses in part, and remands the matter to the Bankruptcy Court for further proceedings consistent with this Order.

## I.  Background

On March 14, 2014, Ling-Nie Hong died of blood loss a few days after delivering her second child (Harry) by cesarean section.  Debtor/Appellee Long-Dei Liu ("Debtor" or "Dr. Liu") was her obstetrician.  Dr. Liu was sued for malpractice by Ling-Nie's surviving spouse and her two young sons, Appellants/Judgment Creditors Yuanda Hong, William Hong, and Harry Hong (collectively, "Appellants" or "Judgment Creditors").  Appellants prevailed, and a California state court entered a multimillion dollar judgment against Dr. Liu and the hospital where Harry was born.

Specifically, a jury awarded Appellants $9,700,000, consisting of $9,100,000 in economic damages and $600,000 in non-economic damages; the jury apportioned liability as 75% to the hospital and 25% to Dr. Liu.  (*See* Doc. 15-9, EOR at 557-72, Ct. App. Op. at 3.)  As to the $9,100,000 in economic damages, after taking into account the hospital's pretrial settlement of $3,250,000, and allocating all the remaining economic damages to Dr. Liu by virtue of joint and several liability, Dr. Liu's liability to Appellants for economic damages was calculated at approximately $5,900,000.  (*See id.* at 13.)  After application of the $250,000 statutory cap on non-economic damages set forth in California Civil Code § 3333.2, and apportioning those non-economic damages, Dr. Liu's liability for non-economic damages was calculated at $62,500. (*Id.*)  The court also awarded $35,000 in costs and post-judgment interest beginning November 3, 2015.  (*Id.*)

This judgment was asserted as a claim against Dr. Liu's Chapter 11 bankruptcy estate.  (*See* Amended Claim No. 2 ($6,214,170.05).)  Only two other claims were made, and those were for miniscule amounts in comparison to the malpractice

judgment. (*See* Claim No. 1 (American Express Bank, FSB ($110.64); Claim No. 3, American Honda Finance Corp. ($43,662.63)).)[1]

The Chapter 11 petition was pending before the Bankruptcy Court for approximately two-and-a-half years. Three separate sets of counsel were awarded fees and costs, and different issues arise on appeal as to each of the three. Counsel David A. Kay ("Attorney Kay") represented Dr. Liu in his unsuccessful appeal of the malpractice judgment. Counsel David Rosenberg (and the firm Rosenberg, Shpall and Zeigen ("RSZ")) represented Dr. Liu in his successful quest to maintain his medical license in the face of the malpractice judgment. Finally, the law firm of Smiley, Wang-Ekvall, LLP ("SWE"), represented Dr. Liu as his general bankruptcy counsel.

On October 16, 2019, and after rejecting five plans of confirmation proposed by the Dr. Liu, the Bankruptcy Court confirmed a plan proposed by the Judgment Creditors. (*See* BK Doc. 616 ("Order Confirming Plan").) A month later, the Bankruptcy Court awarded attorney fees totaling $914,325.75, to be paid from the estate.[2] (BK Doc. 644.)[3]

Appellants seek reversal of the Order awarding fees and costs or, alternatively, they seek remand with instructions for the Bankruptcy Court to make specific findings regarding which services were reasonably likely to benefit the estate and/or were necessary to the administration of the estate. (Opening Br. at 3.)

## II.   Legal Standards

### A.   Standards of Review

The district court reviews the bankruptcy court's legal conclusions de novo and

---

[1] Dr. Liu and his spouse purchased a new 2016 Honda Odyssey minivan, financing $43,547.63 on April 12, 2016, the day before Dr. Liu filed his Chapter 11 petition in this action. (*Compare* Claim 3-1 at 5 (vehicle purchased on Apr. 12, 2016) *with* BK Doc. 1 (petition filed Apr. 13, 2016).)

[2] The Bankruptcy Court described the amount of fees expended in this case as "eye-watering." (Tentative re Fees, EOR 592.) The Court concurs in this description.

[3] A number of documents reveal the bases for the Bankruptcy Court's award of fees. For purposes of the present appeal, the November 21, 2018 Order Approving Final Payment of Fees and Expenses (BK Doc. 644 "Fees Order") must be considered in conjunction with three tentative rulings and the transcript of the hearing on the matter. (*See* Doc. 15-11, EOR 591-604 ("Tentative re Fees"); BK Doc. 663, Oct. 31, 2018 Tr.)

3

1   its factual determinations for clear error.  *In re First T.D. & Inv., Inc.*, 253 F.3d 520,

2   526 (9th Cir. 2001).  "De novo means review is independent, with no deference given

3   to the trial court's conclusion."  *In re Curtis*, 571 B.R. 441, 444 (B.A.P. 9th Cir.

4   2017).

5       Otherwise, the bankruptcy court's allowance of attorney's fees will not be

6   disturbed on appeal absent an abuse of discretion.  *In re Park-Helena Corp.*, 63 F.3d

7   877, 880 (9th Cir. 1995).  In other words, an appellate court should "not disturb a

8   bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its

9   discretion or erroneously applied the law."  *In re Strand*, 375 F.3d 854, 857 (9th Cir.

10  2004) (internal quotation marks omitted).  A bankruptcy court abuses its discretion in

11  awarding fees where the reviewing court has "a definite and firm conviction that the

12  bankruptcy court committed clear error in the conclusion it reached after weighing all

13  of the relevant factors."  *In re Eliapo*, 468 F.3d 592, 596 (9th Cir. 2006).

14      **B.    Duty of Debtor in Possession and His Counsel**

15      In Chapter 11 cases like this one, a bankruptcy court may appoint a trustee, with

16  powers and duties prescribed by statute.  11 U.S.C. § 1104(a).  A bankruptcy court

17  may also permit the debtor in possession to assume those powers and undertake those

18  duties.  11 U.S.C. § 1107(a).  Where it does so, the debtor in possession steps into the

19  shoes of the trustee, and like the trustee, has a fiduciary responsibility to all the

20  creditors of the bankruptcy estate.  *See In re McConville*, 110 F.3d 47, 50 (9th Cir.

21  1997); *In re Woodson*, 839 F.2d 610, 614 & n.5 (9th Cir. 1988).

22      That fiduciary responsibility also rests with bankruptcy counsel for the debtor in

23  possession.  *In re Perez*, 30 F.3d 1209, 1219 (9th Cir. 1994) ("Counsel for the estate

24  must keep firmly in mind that his client is the estate and not the debtor individually.").

25  "Under no circumstances, . . . may the lawyer for a bankruptcy estate pursue a course

26  of action, unless he [or she] has determined in good faith and as an exercise of his

27  professional judgment that the course complies with the Bankruptcy Code and serves

28  the best interests of the estate."  *Id.*; *see also In re Wilde Horse Enterprises, Inc.*, 136

4

B.R. 830, 840 (Bankr. C.D. Cal. 1991) ("In a Chapter 11 proceeding, the attorney for debtor in possession, as an officer of the court charged to perform duties in the administration of the case, has a high fiduciary duty to the estate represented.").  In that vein, the duties of a trustee or debtor in possession include the duty "to maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor's creditors."  *In re Feiler*, 218 F.3d 948, 952 (9th Cir. 2000); *see also In re Consol. Nevada Corp.*, No. 3:13-BK-51236-GWZ, 2017 WL 6553394, at *7 (B.A.P. 9th Cir. Dec. 21, 2017) (The duty of "a chapter 11 debtor-in-possession (or trustee) is . . . to maximize the economic value of the estate."), *aff'd*, 778 F. App'x 432 (9th Cir. 2019).

## C.     Legal and Other Professional Fees (and Costs)

Legal and accounting professionals may be employed to represent or assist the debtor in possession or trustee in carrying out his or her duties under the Bankruptcy Code.  *See* 11 U.S.C. § 327 ("[T]he trustee, with the court's approval, may employ one or more attorneys, accountants, . . . or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.").  All compensation to the professionals appointed under § 327 must be approved by the bankruptcy court.  *See* 11 U.S.C. § 330.  "The burden is upon the applicant to demonstrate that the fees are reasonable."  *In re Nakhuda*, 544 B.R. 886, 902 (9th Cir. BAP 2016).

Subsection (a)(1) of §330 authorizes "reasonable compensation for actual, necessary services rendered" by a professional, together with "actual, necessary expenses."  Subsection (a)(2) authorizes a court to "award compensation that is less than the amount of compensation requested."  Subsection (a)(3) outlines factors a court must consider when determining what is reasonable compensation for services rendered.  Specifically, the bankruptcy court must consider:

(A) the time spent on such services; (B) the rates charged for such services; (C) ***whether the services were necessary to the administration***

5

1
2
3
4
5
6
7
8
9

> *of, or beneficial at the time at which the service was rendered* toward
> the completion of, a case under this title; (D) *whether the services were*
> *performed within a reasonable amount of time* commensurate with the
> complexity, importance, and nature of the problem, issue, or task
> addressed; (E) with respect to a professional person, whether the person
> is board certified or otherwise has demonstrated skill and experience in
> the bankruptcy field; and (F) whether the compensation is reasonable
> based on the customary compensation charged by comparably skilled
> practitioners in cases other than cases under this title.

10
11
12
13

11 U.S.C. § 330(a)(3) (emphasis added, paragraph structure altered).  Finally,
subsection (a)(4) provides that compensation should not be allowed where the
"services . . . were not . . . reasonably likely to benefit the debtor's estate[] or . . .
necessary to the administration of the case."  11 U.S.C. § 330(a)(4).

14
15

The Ninth Circuit Bankruptcy Appellate Panel describes the duty of the
bankruptcy court in considering a fee application:

16
17
18
19
20
21
22
23

> Such examination, in general, should include the following questions:
> First, were the services authorized? Second, were the services necessary
> or beneficial to the administration of the estate at the time they were
> rendered? Third, are the services adequately documented? Fourth, are the
> fees requested reasonable, taking into consideration the factors set forth
> in § 330(a)(3)? . . . Finally, in making this determination, the court must
> take into consideration whether the professional exercised reasonable
> billing judgment.

24
25
26

*In re Mednet*, 251 B.R. 103, 108 (B.A.P. 9th Cir. 2000) (internal citations omitted). In
making the latter determination regarding billing judgment, the bankruptcy court
looks to whether counsel properly considered these questions:

27
28

> (a) *Is the burden of the probable cost of legal services*
> *disproportionately large in relation to the size of the estate and*

6

*maximum probable recovery?*  (b) To what extent will the estate suffer if the services are not rendered?  (c) To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 959 (9th Cir. 1991) (emphasis added).  These considerations are required because counsel has "an obligation to consider the potential for recovery and balance the effort required against the results that might be achieved."  *Id.* at 961.  Counsel have the duty to "scale back" their services such that those services are geared toward the reasonably expected recovery rather than the best possible recovery.  *See In re Auto Parts Club, Inc.*, 211 B.R. 29, 34 (B.A.P. 9th Cir. 1997) ("[A]n attorney must scale back its services based on the reasonable expected recovery for the estate, not the potential optimum recovery.").

Moreover, the relevant benefit to be considered is the benefit to the *estate* rather than to the debtor.  *Id.*  Indeed, "[s]ome bankruptcy courts have denied compensation to attorneys for chapter 11 debtors based on a finding that the attorneys' services primarily benefitted debtors personally or their principals rather than the estate."  *In re Horizon Ridge Med. & Corp. Ctr., LLC*, No. BAP NV-14-1532-DJUKI, 2016 WL 742716, at *7 (B.A.P. 9th Cir. Feb. 23, 2016); *see also In re Love*, 163 B.R. 164, 177 (Bankr. D. Mont. 1993) (disallowing fees where "a substantial portion of [counsel's] services were rendered for the benefit of the [debtor in possession] personally or [his] family and associates rather than for the benefit of the estate").

### D.   Defensive Appellate Rights as Property of the Estate

The filing of a voluntary Chapter 11 petition, like the filing of a voluntary petition under any Chapter of the Bankruptcy Code, creates a bankruptcy estate that includes "all legal and equitable interests of the debtor in property."  11 U.S.C. § 541(a)(1).  "Property" is defined by state law.  *Bunter v. United States*, 440 U.S. 48, 55 (1979).  Under California law, the right to appeal an adverse judgment is a right

7

created by statute and is therefore "property" of the estate.  *See* Cal. Civ. Code § 655; *Cobb v. Univ. of So. Cal.*, 32 Cal.App.4th 798, 803 (1995); *In re Fridman*, No. BAP CC-15-1151-FKIKU, 2016 WL 3961303, at *7 (B.A.P. 9th Cir. July 15, 2016) ("The right to appeal a state court judgment is property that is part of a debtor's estate."); *see also In re Bouzaglou*, No. 2:14-AP-01645-DS, 2018 WL 4062299, at *4, 7 (B.A.P. 9th Cir. Aug. 13, 2018) (holding that defensive appellate rights were property of a Chapter 7 bankruptcy case), *aff'd*, 803 F. App'x 147 (9th Cir. 2020).

### E. Remand with Instructions

An appellate court may remand issues regarding fees to the bankruptcy court with instructions regarding how to proceed.  *See, e.g., Renfrow v. Draper*, 232 F.3d 688, 696 (9th Cir. 2000); *In re Bertola*, 317 B.R. 95, 104 (B.A.P. 9th Cir. 2004) (remanded with instructions as to fees related to a particular legal theory).

## III. Award of Fees and Costs to David A. Kay, Special Counsel to Debtor In Possession

Attorney Kay represented Dr. Liu in his unsuccessful appeal of the malpractice judgment.  He submitted a total of five interim and final fee applications, seeking a total award of $104,227.50 in fees and $8,404.42 in costs.[4]  (*See* BK Docs. 166, 223, 378, 470 & 557.)  The Bankruptcy Court ultimately approved an award of $95,227.50 in fees and $8,404.42 in costs.  (BK Doc. 644.)

### A. Fees and Costs Associated with Pursuit of the Appeal

Appellants challenge the fee award as compensating services not reasonably likely to benefit the debtor's estate.  (Opening Br. at 11-13.)  By awarding fees in pursuit of the appeal of the malpractice judgment, the Bankruptcy Court impliedly found that the appeal was likely to benefit the estate and that Attorney Kay exercised reasonable billing judgment.  In the Tentative re Fees, the Bankruptcy Court correctly noted that a successful appeal would have benefitted the creditors other than

---

[4] In its tentative order, the Bankruptcy Court mistakenly noted that Attorney Kay sought approval of $153,854.13 in fees.  (Tentative re Fees, EOR 603; *cf.* Fees Order at 2 (summarizing fees sought and awarded as to Attorney Kay).)

Appellants in that, in light of the assets of the estate, those creditors' recovery rate would have been 100%. (*See* Tentative re Fees, EOR 604.)  Yet at the hearing, discussing not only Attorney Kay's fees applications but also SWE's, the Bankruptcy Court also alluded to counsel's responsibility to exercise billing judgment, clearly expressing concern that reasonable billing judgment was not exercised in this case:

> You are urging me to say it's all a question of it was not reasonably calculated to lead to any benefit to Creditors.  Well, it sort of was.  The problem was, and what you're really saying is, is too expensive for that goal.  ***Way too expensive by a factor of 20 times.  And that's undeniably true.***

(Oct. 31, 2018 Tr. at 21 (emphasis added).)

The question currently before this Court is whether the Bankruptcy Court abused its discretion in its implicit finding that the appeal was likely to benefit the estate and that Attorney Kay exercised reasonable billing judgment.  On the one hand, viewed objectively, the chance of a successful appeal was very low.

Three of four of Dr. Liu's issues on appeal challenged the sufficiency of the evidence.  (*See* Ct. App. Op. at 4.)  A party "raising a claim of insufficiency of the evidence assumes a daunting burden."  *Whiteley v. Philip Morris Inc.*, 117 Cal. App. 4th 635, 678 (2004) (internal quotation marks omitted); *see also In re Michael G.*, 203 Cal. App. 4th 580, 589 (2012) ("The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts.").  Dr. Liu's final issue involved liability apportionment, wherein Dr. Liu argued that certain corrections and clarifications made by the trial court to the amount of the judgment obviated the imposition of joint tort liability for economic damages.  (*See* Ct. App.  Op. at 12-16.)  Joint tort liability has ancient roots and, although California

tort reform has adjusted the doctrine as to non-economic damages,[5] this ancient doctrine remains unchanged as to economic damages. *See Grundel v. Union Iron Works*, 127 Cal. 438, 440 (1900) (citing case law from as early as 1806); *Aluma Sys. Concrete Constr. of California v. Nibbi Bros. Inc.*, 2 Cal. App. 5th 620, 625 (Ct. App. 2016) ("[T]ort law provides for the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses") (internal quotation marks omitted).

The Court of Appeals easily resolved the sufficiency of the evidence arguments and the joint and several liability question. The trial court's corrections to the amount of judgment were characterized as corrections meant to remedy clerical errors, which are permissible, even where an appeal is pending. Indeed, there was no alteration to the jury's verdict, only clarifications by the trial court as to the amount of judgment enforceable against Dr. Liu, as calculated by operation of California law. Thus, the appeal was ultimately unsuccessful.

On the other hand, a successful appeal would yield a big payoff, adding more than $6,000,000 to the value of the estate. All other things being equal, the bigger the potential payoff, the more reasonable it is to expend fees in pursuit of that payoff.

Thus, viewed in this context, the Court finds no abuse of discretion in the award of fees for services incurred in Attorney Kay's pursuit of the appeal, at least up to a certain point. The Court identifies that point as the decision to pursue a petition for rehearing, which had a near-zero chance of success.

Specifically, the Court of Appeals issued its opinion on May 15, 2018, and Attorney Kay shortly thereafter filed a petition for rehearing. (*See* Doc. 24 at 127-170, RJN (Liu Pet'n for Rehr'g).) Rehearing is generally granted only when there is an error in the decision "where correction would likely produce either a different

---

[5] Although non-economic damages are not imposed jointly after Proposition 51 was passed in 1986, imposition of joint and several tort liability for economic damages remains unchanged. "Thus, in an action subject to Proposition 51, each tortfeasor remains jointly and severally liable to the plaintiff for economic damages, but is liable to the plaintiff for only its proportionate share of noneconomic damages." *Bostick v. Flex Equipment Co.*, 147 Cal.App.4th 80, 90 (2007).

result or a different meaning." *Alameda County Mgmt. Employees Ass'n v. Sup. Ct.*, 195 Cal.App.4th 325, 338 n.10 (2011).  A leading treatise warns: "As a practical matter, rehearings are rarely granted" and that "cost concerns may militate against pursuing a rehearing on tenuous grounds."  Rutter Group, Cal. Prac. Guide Civ. App. & Writs, §§ 12:31 & 12:36.

The petition for rehearing filed after Dr. Liu lost his appeal does not come close to meeting the relevant standard.  It again discusses at length the sufficiency of the medical evidence regarding Dr. Liu's negligence, but the Court of Appeal thoroughly addressed the evidence supporting the jury's verdict as to Dr. Liu's negligence. (*Compare* Pet. for Rehr'g at 11-27 *with* Ct. App. Op. at 4-8.)  Thus, given the high standard for rehearing that is "rarely" met, and layering upon that high standard the "daunting burden" of prevailing on a sufficiency-of-the-evidence argument, given the record already considered by the Court of Appeal, continuing to pursue sufficiency-of-the-evidence arguments on the medical issues in the petition for rehearing was an unreasonable expenditure of the funds of the estate.  The same is true for the sufficiency-of-the-evidence argument regarding the decedent's likely future earnings. (*Compare* Pet. for Rehr'g at 33-36 *with* Ct. App. Op. at 10-12.)

Similarly, the jury instruction argument was clearly unlikely to benefit the estate.  Attorney Kay argued that the trial court should have instructed the jury based on the more general future damages provision of California Civil Code § 3283 (which requires that future damages be "certain to result") rather than instructing the jury using the wrongful death damages pattern instruction, which imposes a lesser requirement.  *See Judicial Council of California Civil Jury Instructions* ("CACI") § 3921 Wrongful Death (Death of an Adult).  This argument was rejected by the Court of Appeal on the theory that the more specific wrongful death measure of damages was applicable.  (Ct. App. Op. at 8-10.)  This conclusion was not error, and therefore continuing to pursue this argument on a petition for rehearing lacked reasonable billing judgment.

Finally, the arguments seeking rehearing on the issue of the amount of the judgment also lack billing judgment.  The trial court clarified the amount of judgment, properly characterizing any earlier ambiguities as "clerical errors."  A trial court is permitted to correct clerical errors even after an appeal is filed.  *See Hennefer v. Butcher*, 182 Cal. App. 3d 492, 506 (Ct. App. 1986).  The amount of the judgment ultimately calculated by the trial court was simply that required by operation of well-established California law.

In short, the petition for rehearing does not identify any deficiency in the Court of Appeal opinion that might justify amendment or rehearing.  Instead, the petition amounted to a mere rehashing of the issues already decided.  Viewed from the perspective of the potential benefit to the estate, continued pursuit of the appeal after the Court of Appeal issued its opinion on May 15, 2018 was of little to no benefit to the estate and—because that would have been obvious to a reasonable attorney at the time the services were rendered—showed unreasonable billing judgment.  It was an abuse of discretion for the Bankruptcy Court to decide otherwise.

## B.    Unlawful Fee-Sharing Arrangement

Appellants also contend no fees should be awarded because Attorney Kay entered into an unlawful fee-sharing agreement with another attorney who was awarded fees in this case.  (Opening Br. at 30-31.)  This fee was disclosed to the Bankruptcy Court in the Debtor in Possession's Application to Employ David A. Kay as Special Counsel.  (BK. Doc. 20 at 4.)  Specifically, the Application to Employ, filed by Lei Lei Ekvall and Robert S. Marticello of SWE, disclosed Attorney Kay's terms of employment as including a referral fee to David Rosenberg:  "4. Referral Fee. The terms of Mr. Kay's employment include a referral fee to David Rosenberg of 15% of all sums paid for attorneys' fees."  (*Id.*)

The unlawful nature of this fee-sharing agreement could not be any clearer: Fees by attorneys that are subject to approval by the Bankruptcy Court may not be subject to a fee-sharing agreement.  Subject to exceptions not implicated here, the

Bankruptcy Code prohibits "a person receiving compensation or reimbursement under section 503(b)(2)" (which incorporates by reference § 330) from "shar[ing] or agree[ing] to share" the "compensation or reimbursement with another person." 11 U.S.C. § 504(a). Both the payment of and receipt of shared fees are prohibited, as are any agreements to pay them or receive them. *Id.*

Therefore, it was unlawful for Attorney Kay to agree to share fees with Attorney Rosenberg, and it was unlawful for Attorney Rosenberg to agree to receive them. This arrangement was not excused or otherwise made lawful or acceptable because it was disclosed in the Application to Employ filed with the Bankruptcy Court, or by the Bankruptcy Court's approval of Attorney Kay's employment.

The Bankruptcy Court stated at the hearing that its reduction to the fees awarded to Attorney Kay in the "arbitrary" amount of $9,000 was to "make a point regarding" the unlawful fee-sharing arrangement. (Tr. at 3-4.) Given the clearly unlawful nature of this fee-sharing arrangement, a failure to disallow at least 15% of the entire fee award—the amount subject to the unlawful fee-sharing agreement—was an abuse of discretion.

Therefore, the Court AFFIRMS IN PART and VACATES IN PART the fee award as to Attorney Kay. Specifically, the Court holds that the award of fees in excess of $73,060.69 was an abuse of discretion, calculated as follows:

| | |
|---|---|
| Total Fees Requested (*See* BK Doc. 644) | $104,227.50 |
| Less: Fees Incurred After Court of Appeals Opinion (*See* BK Doc. 557) | ($18,273.75) |
| Subtotal: | $85,953.75 |
| Less: 15% of Fees Subject to Unlawful Fee-Sharing Agreement | ($12,893.06) |
| Total: | $73,060.69 |

The Court also VACATES the award of costs associated with the court filing fees in June 2018. (*See* Doc. 557 at 7 ($738.80).)

**IV.    Abuse of Discretion Based on Application of the Wrong Legal Standard**

As explained further below, the Court reverses (or reverses in part) the fees award as to RSZ and SWE because the Bankruptcy Court applied the wrong legal standard.  Specifically, the Bankruptcy Court's ruling was based (at least in part) on the erroneous belief that for fees to be disallowed as benefitting the debtor rather than the estate, the services provided must benefit *only* the debtor.  (*See* EOR 594, Tentative re Fees ("The court is aware of the case law cited above that says efforts **solely** benefitting a debtor as opposed to his creditors is not compensable.") (emphasis in the original); *id.* at 591 (citing *Horizon* Ridge); Oct. 31, 2018 Tr. at 10 ("A million dollars in fees to advance the interests of $30,000 makes zero sense. So, you are then left, I suggest, inalterably to the conclusion that a lot of this was really for the benefit of Doctor Liu. That's the problem.  Unfortunately, I don't think the law gives me a very good road map as to what to do in such a situation.  ***I think the standard is that if it was only to benefit Doctor Liu***, he's got to pay for it and not his estate.") (emphasis added).)

The Bankruptcy Court's conclusion is not without support, at least in dicta, but such a standard is incompatible with a debtor in possession's role as a fiduciary for the estate.  The Bankruptcy Court relied on *Horizon Ridge*, in which the BAP stated that "[s]ome bankruptcy courts have denied compensation to attorneys for chapter 11 debtors based on a finding that the attorneys' services **primarily** benefitted debtors personally or their principals rather than the estate."  2016 WL 742716 at *7 (emphasis added).  After a string cite of examples, the *Horizon Ridge* court continued by stating:  "We agree that debtors' attorneys may not be compensated by the estate for services rendered **entirely** for the benefit of principals or other non-debtor parties, because such services are not reasonably likely to benefit the debtor's estate, because such services are not reasonably likely to benefit the debtor's estate." *Id.* (emphasis added) (internal quotation marks omitted).  This passage tends to support the

1   Bankruptcy's Court's conclusion regarding the "primarily" versus "entirely" (or

2   "solely") distinction.

3        However, immediately following this discussion, the *Horizon Ridge* court

4   refocused on counsel's duty to exercise reasonable billing judgment, viewed from the

5   perspective of the estate:

6        In exercising "reasonable billing judgment," the first question an attorney

7        must consider is whether "the burden of the probable cost of legal

8        services [is] disproportionately large in relation to the size of the estate

9        and maximum probable recovery." . . . Because the attorney is employed

10       by the estate, it necessarily follows that the attorney must consider the

11       "burden" and the "maximum probable recovery" ***to the estate***.

12   *Id.* (emphasis in the original) (citation omitted).  Thus, the relevant consideration in

13   the exercise of billing judgment of counsel representing a debtor in possession (or a

14   trustee) is ***always*** a comparison of the burden and the relevant benefit to the estate.

15   This consideration is incompatible with a standard that merely considers the benefit of

16   the estate in relation to the benefit to the debtor.

17        Any conclusion that fees could be paid so long as there is some small or

18   potential benefit to the estate—that is, that the fees may be awarded so long as the

19   services do not ***solely*** benefit the debtor—ignores important legal standards.  Indeed,

20   such a conclusion would alter two important principles governing the predominant

21   issues before the Bankruptcy Court: (1) upholding the debtor in possession's fiduciary

22   duty to the estate and (2) requiring the exercise of billing judgment.

23        First and foremost, such a conclusion is fundamentally incompatible with the

24   debtor in possession's (and his counsel's) fiduciary duty to *the estate*.  As fiduciaries,

25   the debtor in possession and his counsel are ***never*** free to pursue the interests of the

26   debtor at the expense of the estate simply because there may still be some marginal or

27   ancillary benefit to the estate.  *See In re Perez*, 30 F.3d at 1219 ("Under no

28   circumstances, . . . may the lawyer for a Bankruptcy estate pursue a course of action,

unless he [or she] has determined in good faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate.").  Under this standard, the question for counsel is never whether a particular course of action benefits *only* the debtor and not the estate, the relevant question always includes an assessment of the relative burden to the estate in light of the potential or likely benefit to the estate.  Although an incidental benefit to the debtor is not prohibited, pursuit of that incidental benefit cannot be permitted to alter counsel's duty to the estate.

Second, and relatedly, such a conclusion would ignore counsel's duty to scale back fees and use billing judgment based on the likely value to *the estate* rather than to the debtor.  There is no room in the standard applied by the Bankruptcy Court for the three questions posed by the Ninth Circuit in *Puget Sound*.  These three questions require analysis of the relative burden to the estate measured against the probable recovery, the extent and likelihood of benefit to the estate, and the cost or consequences to the estate if the course of action is not pursued.  *See Puget Sound*, 924 F.2d at 959.

Because the Bankruptcy Court applied the wrong legal standard, the Court reverses and remands as set forth below.

## V.   Award of Fees to Rosenberg, Shpall & Zeigen, Special Counsel to the Debtor in Possession

The law firm of Rosenberg, Shpall & Zeigen ("RSZ"), and more specifically, Attorneys Rosenberg and Zeigen, represented Dr. Liu in his successful attempt to retain his medical license.  RSZ submitted two fee applications that were awarded by the Bankruptcy Court in the Order subject to appeal here.  (*See* BK Docs. 472 & 561.) The fees awarded by the Bankruptcy Court were incurred for services from January 1, 2018 through July 30, 2018.  (*Compare* BK Doc. 644 at 3 (ordering fees based on the First and Second Interim Applications) *with* BK Doc. 472 at 5-10 (First Interim Application covering January through March 2018) *and* BK Doc. 561 at 6-13 (Second

Interim Application covering April through July 2018).)   Of the $106,001.25 in fees sought, the Bankruptcy Court awarded $95,000, effectively disallowing $11,001.25.[6] (*See* BK Doc. 644.)

In light of the application of the wrong legal standard, the Court VACATES the portion of the Fees Order awarding fees to RSZ.  The Court REMANDS the issue of the appropriate amount of fees (if any) to the Bankruptcy Court.  In determining the appropriate amount of fees, consistent with § 330(a)(3)(C), the Court directs the Bankruptcy Court to make specific findings and conclusions as to whether (and/or the extent to which) the defense of Dr. Liu's medical license benefitted the estate rather than Dr. Liu at the time the services were rendered.  Additionally, the Bankruptcy Court is directed to make specific findings and conclusions as to whether counsel exercised reasonable billing judgment in conformity with *In re Mednet*, *Puget Sound*, and *Auto Parts*, including whether (and/or to what extent) counsel should have "scaled back" their services based on the reasonably expected recovery to the estate.  *See Auto Parts Club, Inc.*, 211 B.R. at 34.

In doing so, the Court directs the Bankruptcy Court to factor in the following:

1.     January 1, 2018 through July 30, 2018 is the relevant time period for determining whether the services were "beneficial at the time at which the service was rendered" and whether RSZ complied with the duty to "scale back" their services. (*See* BK Docs. 472 at 5-10 & 561 at 6-13.)

2.     Dr. Liu was in his 70s at the time the defense of his medical license was undertaken.  (*See* Oct. 31, 2018 Tr. at 37.)  Thus, it would not be reasonable to assume Dr. Liu would continue to practice medicine for many years into the future.

---

[6] The Bankruptcy Court's tentative ruling outlined a "combin[ation of] issues" that justified the disallowance of a total of $11,001.25.  (See Tentative re Fees, EOR 602.)  These included RSZ's wholesale failure to disclose the fee-sharing agreement with Attorney Kay, the fact that defense of Dr. Liu's medical license issue was of more benefit to Dr. Liu than to the estate, and the fact that Dr. Liu earned relatively little from his medical practice during the pendency of the bankruptcy.  (*See id.* at 599-601.)

17

3.     All of Dr. Liu's Proposed Chapter 11 Plans, including the original Plan filed on April 25, 2017 (well before the relevant time period referred to above), contemplated liquidation of the estate.  (*See* BK Docs. 264, 277, 305, 385 & 417; *cf.* Oct. 31, 2018 Tr. 36 ("I don't accept that your proposition that this case was obviously always a liquidation case.  It's true that that was the plan ended up getting filed."); Tentative re Fees, EOR 601 ("[W]hen the case started . . . , the possibility of an earn-out approach did not seem entirely unlikely.").)

4.     All of Dr. Liu's Proposed Plans claimed the medical practice as an exempt asset.  (*See* BK Doc. 277 Ex. 1; BK Doc. 305 Ex. 1.)[7]

5.     The record lacks any reliable valuation of the medical practice as a going concern or a saleable asset.  The Stake Report (Doc. 22-2 at 187-217) expressly disclaims its use as a business valuation.  Indeed, in providing the $96,000 figure, Stake sets forth in red type, highlighted in yellow, that it is "NOT A BUSINESS VALUATION."[8]  (Doc. 22-2 at 215.)  Similarly, the Biggs report sets forth no analysis or explanation supporting the conclusion that the medical practice should be valued somewhere between the $5,000 to $10,000 range.  (BK Doc. 425 (characterizing the value of the medical practice as "nominal").)

6.     The record lacks evidence to support the assumption that the practice would have been unsaleable without a licensed doctor—presumably Dr. Liu—at the helm.  (*Cf.* Oct. 31, 2018 Tr. at 42 ("THE COURT: And the practice would have been unsaleable without a licensed M.D.? MS. WANG-EKVALL: Correct. I would think so.").)

7.     Dr. Liu's gross revenues dropped by more than half shortly after he filed bankruptcy.  Specifically, in 2014 and 2015, before he filed bankruptcy, Dr. Liu's

---

[7] Exhibit 1 is not attached to the Second through Fourth Amended Plans, but the changes to those Proposed Plans do not suggest an intention to remove the medical practice from the list of exempt assets.

[8] In the text, Stake also expressly acknowledges he was not engaged to provide a proper business evaluation.  He states: "If requested, I will prepare a formal business valuation which may or may not arrive at a conclusion of value similar to the estimate presented in this declaration."  (Stake Report at 9.)

practice reportedly grossed $263,708 and $268,649, respectively. (*See* BK Doc. 50 at 32-33, Debtor's Form 107 (Stmt. Fin. Affairs) (filed on May 18, 2016).) For January 1, 2016 through April 13, 2016 Dr. Liu reported his gross revenue as only $39,203.00. (*Id.*) This is approximately $11,200 per month, or $134,410 annually—approximately half the gross revenue generated in the two previous years. This downward trend not only continued, it worsened. Just a few days into the relevant time period regarding RSZ's fees, on January 5, 2018, the November 30, 2017 Operating Report was filed. (BK Doc. 422.) It reported only $153,910.64 in cumulative post-petition gross revenue for the nineteen-and-a-half-month period from the time of the filing of the petition in mid-April of 2016 to November 30, 2017. (*Id.* at 14.) By the end of the November 2017, the average gross revenue for the medical practice had dropped more than another $3,000, to approximately $7,900 per month.

## VI.   Award of Fees and Costs to Smiley Wang-Ekvall, LLP, General Counsel to Debtor in Possession

The Bankruptcy Court awarded $724,098.25 of the $774,098.25 sought by SWE. (BK Doc. 644.) Of the disallowed $50,000, three categories of reductions are detailed in the tentative, totaling $23,551. (EOR 591-97, Tentative re Fees ($5,000 for administrative tasks, $3,551 for pleadings never filed, and $15,000 related to filing applications for employment for other counsel).)[9]

In making the award, the Bankruptcy Court acknowledged Appellants' argument that the services benefitted only Dr. Liu individually or his spouse, and not the estate and creditors. (*Id.* at EOR 592.) And it noted that "the total of over $1 million is eye-watering," and that it was "particularly [so] when one considers that the total [of the claims] of all . . . unsecured creditors [other than Appellant is] only about $30,000." (*Id.*)

---

[9] As set forth below, the Court vacates and remands the issue regarding fees for the administrative tasks. The Bankruptcy Court's deductions to the fees sought for pleadings never filed and related to filing applications for employment for other counsel are not part of this appeal.

As set forth below, the Court AFFIRMS in part, VACATES in part, and REMANDS in part.

### A.    Administrative Tasks Billed at Attorney Rates

Apparently agreeing with Appellant's arguments that SWE billed attorney hourly rates (ranging from approximately $370 to over $600 per hour) for paralegal work, the Bankruptcy Court made an "arbitrary adjustment" of only $5,000 to SWE's fee request of approximately $159,967.50 for such administrative tasks.  (Tentative re Fees, EOR at 592-93.)  Services rendered on behalf of the estate must be charged at an appropriate rate.  *See* 11 U.S.C. § 330(a)(3)(B) (requiring courts to consider "(B) the rates charged for such services").  Appropriate rates are determined by practices and rates in the community, including rates for paralegal services, which are different than attorney rates.  *See Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) ("[F]ees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is the prevailing practice in a given community.") (internal quotation marks omitted); *In re Music Merchants, Inc.*, 208 B.R. 944, 948 (B.A.P. 9th Cir. 1997) (affirming bankruptcy court's reduction in hourly rate where senior attorney performed work more appropriately performed by a lower-paid professional, such as a paralegal or junior associate).  Separate billing for paralegal work is the prevailing practice in the Central District of California.  *See, e.g.*, *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206-07 (9th Cir. 2013); *Andrew Potter v. Big Text Trailer Mfg., Inc.*, No. EDCV181678PSGKKX, 2020 WL 1942619, at *9 (C.D. Cal. Mar. 2, 2020); *Vogel v. Dolanotto, LLC*, No. 216CV02488ODWKSX, 2018 WL 1684303, at *4 (C.D. Cal. Apr. 5, 2018); *Marcus v. Countrywide Home Loans, Inc.*, No. CV 17-950 PA (FFMX), 2017 WL 11286023, at *7 (C.D. Cal. Oct. 13, 2017).

Here, the Court concludes that the Bankruptcy Court abused its discretion by awarding fees for paralegal tasks at attorney rates, reducing the fee award only by an arbitrary 3.125%.  Therefore, the Court VACATES this part of the Fees Order, and

REMANDS the issue to the Bankruptcy Court with the instruction that it determine an appropriate paralegal rate and to award fees for the 387.6 hours in this category accordingly.

### B.    Adversary Proceeding and Motion for Derivative Standing

Appellants sued Dr. Liu's wife in an adversary proceeding in light of her claim that certain property was her separate property, and therefore excluded from Dr. Liu's individual bankruptcy estate.  (*See* AP Doc. 1 (Complaint).)  The trial on the matter resulted in significant assets becoming part of the estate.  (*See* AP Doc. 224 (Judgment).)  SWE expended 93 hours ($52,381) in filing two motions to dismiss, an answer, and a counterclaim.  (Opening Br. at 28.)  The Bankruptcy Court saw no basis for adjustment and instead awarded all the fees sought by SWE in the adversary proceeding.  (*See* Tentative re Fees, EOR 593-94.)  In doing so, the Bankruptcy Court applied the erroneous legal standard discussed above, noting that only fees expended "***solely*** benefitting a debtor . . . [are] not compensable."  (*Id.* EOR 594 (emphasis in the original).)

Given that the adversary action sought to marshal assets for the estate, and given Mrs. Liu's position that certain assets were her separate property (and thus, not property of the estate), the defense of the adversary action was neither "necessary to the administration of the case" nor "reasonably likely to benefit the debtor's estate." 11 U.S.C. § 330(a)(4).  Although Dr. Liu may well have had a personal interest in defending against the adversary action, the estate had no such interest.[10]  Thus, awarding payment of counsel's fees out of the estate was an abuse of discretion.

The same is true for the fees awarded in connection with opposing Appellants' motion to be granted derivative standing, 14.90 hours for a total of $8,921.00. (Opening Br. at 23.)  By filing the motion, Appellants sought declaratory relief and asserted a voidable transaction claim; essentially, Appellants sought derivative

---

[10] Because these services benefitted only Dr. Liu, this award of fees would be an abuse of discretion even under the erroneous standard.

standing (on behalf of the estate) to assert a claim to void a preferential transfer of property.  (*See generally* BK Doc. 224 (Motion for Derivative Standing).)  This motion was filed in the main bankruptcy case, but it is clearly related to the adversary action, seeking essentially the same relief as that sought in the adversary action regarding Mrs. Liu's claimed separate property.  (*See id.*)  By opposing derivative standing, counsel were essentially defending Mrs. Liu's position, which was contrary to the interests of the estate.  Therefore, awarding these fees out of the estate was an abuse of discretion.

The Court therefore VACATES the award of fees as to defending against the adversary action ($52,381) and opposing the derivative standing motion ($8,921.00).

## C.    Rule 2004 Examinations and Opposing Related Contempt Motion

Appellants object to 103.10 hours ($45,876) SWE spent opposing and attending the Rule 2004 examination of Dr. and Mrs. Liu and on the related production of documents.  (*See* Opening Br. at 22.)  Appellants also object to another 3.8 hours ($2,123) that was spent opposing a motion for an order to show cause ("OSC") regarding contempt as to Mrs. Liu, who failed to appear for her examination.  (*Id.* at 23.)

More specifically, Appellants contend the Rule 2004 documents should have been produced voluntarily by the debtor in possession in keeping with his fiduciary role.  (Opening Br. at 22.)  SWE counters that Appellants failed to confer before the Rule 2004 examinations, leading to litigation regarding the examinations.  (SWE Resp. Br. at 17-18 & 49-51.)  Relatedly, Appellants sought an OSC as to Mrs. Liu based on her failure to appear for a Rule 2004 examination and failure to produce documents.  (BK Doc. 123.)  The Bankruptcy Court denied the Motion, but it did so on the basis of the failure to meet and confer regarding the Motion, along with a general desire for counsel to get along and to work out routine matters.  (*See* BK Doc. 151.)

These issues relate to the routine administration of the estate.  As recognized by the Bankruptcy Court, the parties took a more adversarial stance than was necessary, leading to increased fees.  Pointedly, the stance taken by Dr. Liu may have been more adversary than that befitting a debtor in possession with a fiduciary obligation to the estate; nevertheless, that adversarial stance on these two particular points arose at least in part because Appellants' counsel failed to follow Local Rules regarding meeting and conferring.

Because there is a basis for the Bankruptcy Court to conclude that these fees were incurred in performing services "necessary to the administration of the case," 11 U.S.C. § 330(a)(4), the Court finds no abuse of discretion in awarding these fees, and therefore AFFIRMS the Fees Order as to these categories of fees.

### D.    Automatic Stay Violation and Relief from the Automatic Stay

Appellants also challenge 18.30 hours ($10,222.50) that are related to objections based on an automatic stay violation and opposing a motion for relief from the automatic stay.  (Opening Br. at 23.)  These fees were incurred when Dr. Liu sought relief from the automatic stay to enable him to file his appeal of the state court malpractice judgment.  (*See* SWE Resp. Br. at 52-54; BK Doc. 82.)  There is no abuse of discretion and the Court AFFIRMS this portion of the Fees Order.

### E.    Debtor's Proposed Plans

Appellants oppose approximately $351,000 in fees incurred in connection with Dr. Liu's five Proposed Plans, including numerous extensions of time sought by Dr. Liu.  (*See* Opening Br. at 23-24; *cf.* EOR at 594-95.)  Ultimately, the Bankruptcy Court affirmed a plan submitted by the Judgment Creditors.  Nevertheless, the Bankruptcy Court noted that the Debtor's plan came close to being approved, and the Judgment Creditors' Plan was confirmed after they proposed a term that Debtor could not propose.  (*See* SWE Resp. Br. at 41 (referring to Appellants' agreement to subordinate their claim to other unsecured creditors' claims).)  For that reason, except

1   for the separate issue discussed in the next section, the Court AFFIRMS the Fees

2   Order as to this category of fees.

3          **F.**    **Absolute Priority Rule and Defensive Appellate Rights as Property**

4                  **of the Estate**

5         The Bankruptcy Court required the parties to brief whether Dr. Liu's Fourth

6   Amended Proposed Plan ran afoul of the absolute priority rule of 11 U.S.C.

7   § 1129(b)(2).  (*See* Opening Br. at 15-16, 24 & 26-27; Doc. 23-6 at 143-51 (SWE Ex.

8   56 (Mar. 28, 2018 Hr'g Tr.).)  Because this proposal included Dr. Liu's retention of

9   the right to control his appeal of the malpractice judgment, for the Bankruptcy Court

10  to confirm the Fourth Amended Proposed Plan, Dr. Liu had to convince it that

11  defensive appellate rights do not become property of the estate.  (*See* Opening Br. at

12  15-16, 24 & 26-27.)  The parties submitted additional briefing.  (BK Docs. 494, 506 &

13  508.)  SWE billed a total of 194.7 hours ($93,291) advancing this argument to defend

14  its Fourth Amended Proposed Plan.

15        At the time of the filing of Dr. Liu's briefs on the subject, courts within the

16  Ninth Circuit had made clear that defensive appellate rights are property of the estate.

17  *See In re Fridman*, No. BAP CC-15-1151-FKIKU, 2016 WL 3961303 (B.A.P. 9th

18  Cir. July 15, 2016).  In *Fridman*, in 2016, the BAP concluded that the sale of the right

19  to appeal a judgment against the debtors was an asset of the estate.  2016 WL 3961303

20  at *7.  The BAP noted that "[t]he right to appeal a state court judgment is property that

21  is part of a debtor's estate."  *Id.*  In making its conclusion, the BAP relied on *In re*

22  *McCarthy*, *In re Marciano*, and *In re Mozer.*  *Id.*

23        In *In re McCarthy*, BAP No. CC–07–1083–MoPaD, 2008 WL 8448338, at *16

24  (9th Cir. BAP Feb. 19, 2008), the BAP affirmed the bankruptcy court's holding that

25  defensive appellate rights were property of the estate.  *In re Marciano* held similarly,

26  analyzing California law and concluding that the right to appeal an adverse judgment

27  is a property right, and that the right becomes part of the bankruptcy estate.  No. 1:11–

28  BK–10426–VK, 2012 WL 4369743, at *3 (C.D.Cal. Sept. 25, 2012).  The court in *In*

*re Mozer*, 302 B.R. 892, 896 (C.D.Cal.2003) noted that "[t]he right to appeal is valuable in nature and is the property of the bankruptcy estate under California's broad concept of property rights." The court therefore concluded that "all of the Debtors' appellate rights, including the Defensive Appellate Rights, are saleable by the Trustee." *Id.* At the relevant time, at least two other Circuits had held similarly.[11] *In re Croft*, 737 F.3d 372, 377 (5th Cir. 2013) ("Croft's defensive appellate rights are property under Texas law, and became part of the estate when he filed for bankruptcy."); *Martin v. Monumental Life Ins. Co*., 240 F.3d 223, 232 (3d Cir. 2001) ("The right to appeal is part of the debtors' estates.").

Although the Bankruptcy Court requested briefing on the subject, (*see* SWE Resp. Br. at 13; Doc. 23-6 at 143-51, Mar. 28, 2018 Tr. at 28-31)), it was still up to SWE to demonstrate reasonable billing judgment. In light of the clear and well-settled case law on this topic, the expenditure of 194.70 hours of counsel's time, for a total bill of $93,291, to be charged to the estate, was a colossal waste of time and money. Indeed, at the hearing on the fee award, the bankruptcy judge specifically asked the United States Trustee to weigh in on the fees spent in pursuit of this case. (*See* Oct. 31, 2018 Tr. at 28.) When the dialogue turned to the issue of defensive appellate rights, and the Trustee expressed disapproval of awarding fees nearing $100,000 for briefing on this issue. (*See id.* at 32 ("I would say though on the issue of just the Defensive Appellate Rights, I mean that's an issue our office is very familiar with. I don't know how he gets $100,000.") & 33 ("There's no way you could get to $100,000 on that.").) The Trustee expressly referred to the *Fridman* and the *Marciano* cases as establishing that defensive appellate rights become property of the estate. (*Id.* at 32.)

---

[11] Since then, the Ninth Circuit has joined these two Circuits, albeit in an unpublished case. *See In re Bouzaglou*, No. 2:14-AP-01645-DS, 2018 WL 4062299, at *3 & n.4 (B.A.P. 9th Cir. Aug. 13, 2018) (noting that "Bouzaglou's defensive appeal rights were property of his bankruptcy estate"), *aff'd*, 803 F. App'x 147, 148 (9th Cir., May 1, 2020) (noting that the appellant had "chose[n] to file for bankruptcy, thereby voluntarily relinquishing his personal right to appeal").

The amount of time expended on this issue was grossly disproportionate to any possible benefit to the estate, and counsel failed to demonstrate reasonable billing judgment in spending nearly 200 hours advancing the argument.  Therefore, the Court concludes that it was an abuse of discretion to award the entire amount of fees sought in connection with this issue.  The Court VACATES the Fees Order on this issue and REMANDS for to the Bankruptcy Court to determine an amount of fees that would be reasonable for briefing a single, straightforward legal issue.

**VII.   Conclusion**

As set forth above, the Court AFFIRMS IN PART, REVERSES IN PART, and REMANDS IN PART.

**IT IS SO ORDERED.**

**DATED:**  September 14, 2020

The Hon. Josephine L. Staton
United States District Judge

CC: BANKRUPTCY COURT; BAP